**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MINTABLE PTE. LTD., | **Case No.: 23-cv-08215** |
| Plaintiff, | |
| v. | |
| MINTOLOGY INC. and CINDY JIN, both in her individual capacity and as CEO of Mintology, Inc., | |
| Defendants. | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT JUDGMENT**</u>

# TABLE OF CONTENTS

I.   STATEMENT OF FACTS ................................................................................................. 1

II.  PROCEDURAL BACKGROUND .................................................................................... 4

III. ARGUMENT ................................................................................................................... 6

   A.   The Entry of Default Judgment is Appropriate. .......................................................... 6

   B.   Plaintiff Has Established Defendant's Liability. .......................................................... 7

      1.   Plaintiff adequately alleged Trademark Infringement under the Lanham Act, 15 U.S.C. § 1125 7

         i.   Plaintiff's "mintology" mark is valid and entitled to protection. ............................. 8

        ii.   Defendant's continued use of the mark will continue to cause confusion. ............................ 9

      2.   Plaintiff adequately alleged common law trademark infringement under New York state law 11

      3.   Plaintiff adequately alleged dilution under New York State's anti-dilution law, N.Y. Gen. Bus. § 260-1. .................................................................................................................... 11

   C.   Plaintiff is Entitled to a Permanent Injunction. ........................................................ 13

   D.   Plaintiff is Entitled to Heightened Statutory Damages and Costs and Attorney's Fees. ........... 14

      1.   Costs .................................................................................................................... 15

      2.   Attorneys' Fees ..................................................................................................... 15

IV.  CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) ........................................................................................8

*Allied Maint. v. Allied Mech. Trades, Inc.*,
    42 N.Y.2d 538 (1977) ................................................................................... 11-12

*A.M. Surgical, Inc. v. Akhtar*,
    No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560 (E.D.N.Y. Apr. 19, 2016)................. 12-13

*Brennan's, Inc. v. Brennan's Rest., L.L.C.*,
    360 F.3d 125 (2d Cir. 2004) ....................................................................................9

*Bricklayers and Allied Craftworkers Local 2, Albany, N.Y., Pension Fund v. Moulton Masonry & Constr., LLC*,
    778 F.3d 182 (2d Cir. 2015) ....................................................................................6

*Caliko, SA v. Finn & Emma, LLC*,
    No. 21-CV-3849 (VEC), 2022 WL 596072 (S.D.N.Y. Feb. 28, 2022) ................................8, 11

*Campbell v. Huertas*,
    No. 20-CV-3471(KAM), 2023 WL 1967512 (E.D.N.Y. Feb. 13, 2023) ...............................15

*City of New York v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011) ....................................................................................6

*Diller v. Steurken*,
    185 Misc.2d 274 (Sup. Ct. N.Y. Cnty. 2000) ........................................................13

*Doctor's Assocs., Inc. v. Patel*,
    No. 18-CV-2386 (GBD), 2019 WL 3916421 (S.D.N.Y. Jul. 19, 2019) ..................................16

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ...............................................................................................13

*Focus Prods. Grp. Int'l, LLC v. Katri Sales Co.*,
    No. 15-CV-10154 (PAE) (SDA), 2023 WL 3815276 (S.D.N.Y. Jun. 5, 2023).......................16

*Gaudreau v. Amer. Promotional Events, Inc.*,
    511 F.Supp.2d 152 (D.D.C. 2007) .........................................................................7

*George & Co. LLC v. Spin Master U.S. Hldgs, Inc.*,
  2021 WL 6127389 (E.D.N.Y. Nov. 23, 2021)..........................................................................7

*Glob. Commodities, Inc. v. Dayax, LLC*,
  No. 18-CV-5225 (DRH) (ARL), 2022 WL 431426 (E.D.N.Y. Jan. 13, 2022) .......................17

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
  157 F.Supp.2d 234 (S.D.N.Y. 2000) ......................................................................................7

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
  73 F.3d 497 (2d Cir. 1996) ...................................................................................................12

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
  826 F.Supp.2d 619 (S.D.N.Y. 2011).....................................................................................14

*Hudson Furniture, Inc. v. Mizrahi*,
  2024 WL 565095 (S.D.N.Y. Feb. 7, 2024) ...........................................................................15

*H.W. Carter & Sons, Inc. v. William Carter Co.*,
  913 F.Supp. 796 (S.D.N.Y. 1996) ...........................................................................................8

*Kelly Toys Hldgs., LLC v. alialialiLL Store*,
  606 F.Supp.3d 32 (S.D.N.Y. 2022) ..........................................................................6-7, 9, 13

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
  192 F.3d 337 (2d Cir. 1999) .................................................................................................11

*Leviton Manuf. Co., Inc., v. Fastmac Performing Upgrades, Inc.*,
  2013 WL 12334706 (S.D.N.Y. Aug. 20, 2013)......................................................................13

*Microban Prods. Co. v. Iskin Inc.*,
  No. 14-CV-05980 (RA) (DF), 2016 WL 4411349 (S.D.N.Y. Feb. 23, 2016)........................16

*Montblanc-Simiplo GMBH v. Colibri Corp.*,
  692 F.Supp.2d 245 (E.D.N.Y. 2010) ....................................................................................14

*Nespresso USA, Inc. v. African Am. Coffee Trading Co. LLC*,
  No. 15-cv-5553-LTS, 2016 WL 3162118 (S.D.N.Y. June 2, 2016)......................................6-7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)...............................................................................................................15

*Patsy's Italian Rest., Inc. v. Banas*,
  575 F.Supp.2d 427 (E.D.N.Y. 2008) .....................................................................................12

*Pearson Educ., Inc. v. Vegara*,
    No. 09-cv-6832 (JGK)(KNF), 2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010) ........................14

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961) .......................................................................................9, 11

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.*,
    813 Fed. App'x 39 (2d Cir. 2020) .............................................................................14

*Sally Gee, Inc. v. Myra Hogan, Inc.*,
    699 F.2d 621 (2d Cir. 1983) .......................................................................................11

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    909 F.3d 519 (2d Cir. 2018) .......................................................................................15

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
    982 F.2d 633 (1st Cir. 1992) ..................................................................................8, 14

*Tri-Star Pictures, Inc. v. Unger*,
    14 F.Supp. 2d 339 (S.D.N.Y. 1998) ........................................................................12

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010) .........................................................................................8

*Tiffany (NJ) v. Luban*,
    282 F.Supp.2d 123 (S.D.N.Y. 2003) .................................................................. 15-16

*United States Polo Ass'n v. PRL USA Hldgs., Inc.*,
    800 F.Supp.2d 515 (S.D.N.Y. 2011) .................................................................. 13-14

*Van Praagh v. Gratton*,
    993 F.Supp.2d 293 (E.D.N.Y. 2014) ..........................................................................9

*Venus by Marai Tash, Inc. v. Prinatriam Ltd.*,
    No. 21-CV-2098 (LGS) (RWL), 2022 WL 4085747 (S.D.N.Y., Aug. 24, 2022)....................17

*Woodstock Ventures LC v. Woodstock Roots, LLC*,
    387 F.Supp.3d 306 (S.D.N.Y. 2019) ..........................................................................8

**Statutory Authorities**

15 U.S.C. § 1064............................................................................................................7

15 U.S.C. § 1116 ..........................................................................................................13

15 U.S.C. § 1114(1)(a)....................................................................................................8

15 U.S.C. § 1117(a)............................................................................................................15

Lanham Trademark Act, 15 U.S.C. §§ 1120, 1125 et seq.................................................... *passim*

N.Y. Gen. Bus Law § 360-l...............................................................................................8

Plaintiff Mintable Pte. Ltd. ("Mintable" or "Plaintiff") submits this Memorandum of Law in support of its Motion for Entry of Default Judgment ("Motion") against Defendant Mintology Inc. ("Defendant"). In accordance with the Court's Individual Rules, Local Civil Rule 55.2(b), and Federal Rule of Civil Procedure 55(b)(2), Plaintiff respectfully submits that entry of default against Defendant Mintology Inc. is appropriate and seeks the following relief: 1) entry of a final judgment and permanent injunction by default; and 2) attorneys' fees and costs.

## I.    STATEMENT OF FACTS

Mintable, a marketplace for non-fungible tokens ("NFTs"), has been at the forefront of innovation in the NFT industry since its founding in 2018, pioneering "gasless minting" and establishing itself as one of the most comprehensive digital file marketplaces built on the decentralized web. Complaint ("Compl.") ¶ 2, ECF No. 11. In 2021, following months of development and planning, Mintable began developing an enterprise services arm, Mintology, to expand the NFT marketplace to corporate clients. *Id.* Mintable chose the unique moniker "Mintology" for the new business-to-business division after research revealed that no other company in the NFT or technology space used the name. *Id.* ¶ 17. Plaintiff launched their website and social media platforms using the name "mintology.app" in Summer 2021. *Id.* ¶ 11.

As a result of Mintable's significant investment in the enterprise, Mintology partnered with global and domestic brands including MasterCard, Mediacorp, Station Holdings LLC, Zedge Inc., Lightricks, and Immutable. *Id.* ¶ 2. In September 2021, Mintology hired its first employee, and by November 2021 it was appearing at industry events and festivals. *Id.* ¶ 22, 24. In late 2021 and early 2022, Mintology discussed partnerships and collaborations with the Miami Heat, Citibank, the Royal Bank of Canada, and an American watch company. *Id.* ¶¶ 21, 25, 27, 29. On January 10, 2022, Mintable applied to register the "mintology" mark in Singapore, which was registered on

September 12, 2022. *Id.* ¶ 24; Notice of Opp., *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Dec. 26, 2023).  Building off this momentum, Mintology launched to the general public on or about March 17, 2022. Compl. ¶ 26. At the time of the filing of the Complaint, Mintable and Mintology's customer base consisted of over 1 million registered users spread across 50 plus countries, with over 28 million items for sale. *Id.* ¶ 30.

As Mintology grew, cultivating brand recognition as a business-to-business platform for NFTs, Defendant and its CEO, Cindy Jin, created the "mintology.studio" domain and Twitter account in August 2021, with plans to launch in the first quarter of 2022, by which time Plaintiff's Mintology division was already established and marketing its services to international investors and clients. *Id.* ¶¶ 31-33. Whereas Defendant stated in its United States Patent and Trademark Office ("USPTO") trademark application that it first used the mark "Mintology" in commerce on December 6, 2021, Plaintiff had been using the mark with prospective brands and investors since the summer of 2021. *Id.* ¶ 34. In or around August 2022, Defendant pivoted its business model to be an NFT commerce platform targeted to businesses, identical to Plaintiff's Mintology division. *Id.* ¶ 35. That product, a mirror image of Plaintiff's Mintology division, launched much later—in November 2022. *Id.* As described on its website on September 18, 2023, Defendant purported to offer its services to brands, touting that it could "instantly reach and connect with NFT native users by creating campaigns using the Mintology platform tools" and that brands could "launch their own NFT/exclusive deals to further engage with their target audience." *Id.* Defendant's language parroted phraseology used by Mintable in its public facing statements. *Id.*

Recognizing that such similarity in name and services would confuse Plaintiff's consumers, clients, and investors, and that Defendant would not provide the same high-quality goods or services as Plaintiff's Mintology division, Plaintiff's Singaporean counsel sent what

would be the first of many cease-and-desist letters to Defendant, to the attention of Ms. Jin, on August 11, 2022. *Id.* ¶ 37. That cease-and-desist letter asserted Plaintiff's senior claim to the "mintology" mark and notified Defendant that it had applied for the "mintology" trademark in Singapore on January 10, 2022. *Id.* ¶ 38. Citing the confusingly identical names and products offered by Plaintiff and Defendant, the letter warned that continued use of "mintology" would constitute a potential infringement of Plaintiff's mark. *Id.* Neither Defendant nor Ms. Jin responded to or heeded the warning in the cease-and-desist letter. Quite the opposite; Defendant submitted its application to the USPTO to register the mark "mintology" days later, on August 26, 2022. *Id.* ¶ 39.

Defendant attested in the USPTO application that no other person "ha[d] the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." *Id.* ¶ 40. This statement was patently false; having received the cease-and-desist letter 15 days earlier, Defendant was indisputably aware that the use of the "mintology" name infringed on Plaintiff's mark. *Id.* However, in a continued attempt to resolve the issue amicably, Plaintiff's Singaporean counsel sent Defendant follow-up letters on August 31, 2022, and September 14, 2022. Neither Defendant nor Ms. Jin responded. *Id.* ¶¶ 42-43.

Several months later, on May 24, 2023, Plaintiff's U.S. counsel sent Defendant a fourth cease-and-desist letter, which stated that Defendant was knowingly infringing on Plaintiff's mark, that its use of the trademark was made with the apparent intent to trade on the goodwill associated with Plaintiff's mark, and that its attempt to register the trademark after receiving explicit notice of Plaintiff's senior use of the mark evinces bad faith. *Id.* ¶ 44. Again, neither Defendant nor Ms. Jin responded to the letter. *Id.* ¶ 45.

On June 8, 2023, Plaintiff's U.S. counsel made a last effort to resolve this issue amicably. It sent a letter to JPG Legal, the law firm that assisted Defendant with its trademark application, attaching the May 24, 2023 cease-and-desist letter and informing counsel of the potential litigation that would ensue if Defendant and Ms. Jin did not cease and desist from all use of the mark. *Id.* ¶ 46. JPG Legal acknowledged receipt of the letter on June 12, 2023, and stated that it had reached out to its client. However, Defendant never responded to the letter. *Id.* ¶ 47.

Since sending the cease-and-desist letters, Plaintiff's Mintology division has continued to expand. However, Plaintiff's growth will be limited by the actual and potential confusion created by Defendant's continued use of the same mark in the same industry, purporting to offer the same services, and/or sullied by Defendant's now-inactive social media accounts and broken website.[1] Notice of Opp., *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272, ¶ 9 (T.T.A.B. Dec. 26, 2023); Compl. ¶ 52. Indeed, candidates interviewing at Plaintiff's Mintology division have confused Defendant's website for Plaintiff's company. *Id.* During interviews with journalists, Plaintiff's CEO has been asked questions about Defendant's website in relation to "Mintology." *Id.* Likewise, potential partners and suppliers have mistaken the companies: Plaintiff's marketing firm referenced Defendant's data and information when providing services to Plaintiff's Mintology division. *Id.*

## II.    PROCEDURAL BACKGROUND

After Plaintiff's numerous attempts to resolve the issue amicably went unanswered, Plaintiff filed this action on September 18, 2023 against defendants Mintology Inc. and Cindy Jin, in her individual capacity and as Mintology Inc.'s CEO, alleging claims of trademark infringement

---

[1] In October of 2023, after this suit had been filed, Defendant again pivoted its business model. Its original website, mintology.studio, is now inactive, and it appears to have moved its operations to a new domain, "app.mintology.studio," (similar to Plaintiff's "mintology.app"), which touts "Hot Brand Deals." As of the date of this filing, the new website is skeletal and only partially operational.

and false or fraudulent procurement under the Lanham Act (15 U.S.C. §§ 1120, 1125, et seq.), and common law trademark infringement and dilution under New York state law. Compl, ECF No. 11. Defendant was served on September 21, 2023. ECF No. 14. Defendant failed to appear, and on October 23, 2023, the Clerk of this Court entered a Certificate of Default against Mintology Inc. ECF No. 18. Plaintiff's counsel spent months trying to locate Ms. Jin to effect service upon her, including searching public records in New York and Singapore and tracking her social media. Affirmation of Art Middlemiss ("Middlemiss Aff."), ¶¶ 2-4. Unable to locate Ms. Jin, Plaintiff filed a notice of voluntary dismissal of Ms. Jin on December 18, 2023 (ECF No. 19), which this Court granted on December 20, 2023. ECF No. 20.

At the same time, Plaintiff was engaged with the Defendant in a concurrent proceeding before the USPTO Trademark Trial and Appeals Board ("TTAB") to contest Defendant's application to trademark "mintology" (the "mark"). On December 26, 2023, Plaintiff opposed Mintology Inc.'s USPTO trademark application. ECF No. 23. Mintology Inc.'s response to the opposition was due on February 5, 2024. Notice and Trial Dates Sent, *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Dec. 26, 2023). On February 4, 2024, one day before the deadline, Mintology Inc. filed a consent motion to extend the deadline to respond. Consent Motion to Extend, *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Feb. 4, 2023). Having never actually consented to such an extension and learning about said motion only after it was filed, Plaintiff filed a letter with TTAB explaining that it did not consent and requesting an entry of default. Plaintiff's Notice of Non-Consent; *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Feb. 5, 2023). On February 6, 2024, TTAB entered a notice of default against Mintology Inc. and gave the company until March 7, 2024 to show cause as to why a default judgment should not be entered. Notice of Default, *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B.

Feb. 6, 2023).  As of the date of this filing, Mintology Inc. has not responded.

### III.    ARGUMENT

A federal court may order a default judgment under Fed. R. Civ. P. 55(b) following the

entry of default by the court clerk, which was entered in this case on October 23, 2023. ECF No.

18. In determining whether to grant a motion for default judgment, this court must first consider

the following threshold factors: (1) whether the defendant's default was willful; (2) whether the

defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the

nondefaulting party would suffer as a result of the denial of the motion for default judgment.

*Nespresso USA, Inc. v. African Am. Coffee Trading Co. LLC*, No. 15-cv-5553-LTS, 2016 WL

3162118, at *6 (S.D.N.Y. June 2, 2016). Thereafter, because "a defendant who defaults thereby

admits all well-pleaded factual allegations contained in the complaint," the court must accept the

allegations and determine whether the plaintiff has adequately pled those claims. *City of New York*

*v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Bricklayers and Allied*

*Craftworkers Local 2, Albany, N.Y., Pension Fund v. Moulton Masonry & Constr., LLC*, 778 F.3d

182, 189 (2d Cir. 2015). The entry of a default judgment is entrusted to the sound discretion of the

district court (*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)), which must "satisfy

itself that the plaintiff has established a sound legal basis upon which liability may be imposed."

*Kelly Toys Hldgs., LLC v. alialialiLL Store*, 606 F.Supp.3d 32, 48 (S.D.N.Y. 2022) (internal

citations omitted). However, a complaint will be deemed not well-pled "only in very narrow,

exceptional circumstances." *Id.*

Here, each of the requirements for the entry of default judgment as to Defendant are met.

### A.  The Entry of Default Judgment is Appropriate.

The three threshold requirements are satisfied as to Defendant. *First*, Defendant's default

was willful. Defendant was properly served in this matter. ECF No. 14. And, in the TTAB matter,

where Plaintiff's Opposition made explicit reference to this lawsuit, Defendant was reminded not only of the pending claims here, but of its failure to file a timely response to them. *See* Notice of Opp., *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Dec. 26, 2023). It chose to appear in the TTAB matter, while ignoring this suit. Its default was unquestionably willful. *Second,* because it failed to appear, Defendant has likewise failed to present any meritorious defenses. *Kelly Toys*, 606 F.Supp.3d at 49. And *third*, denying Plaintiff's motion for default judgment would be highly prejudicial "since Plaintiff would be left without any recourse to address Defendant['s] unlawful conduct." *Id.*; *see also Nespresso*, 2016 WL 3162118 at *2, n.3.

### B.  Plaintiff Has Established Defendant's Liability.

Plaintiff's allegations, accepted here as true, adequately establish claims of (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1125, (2) common law trademark infringement under New York state law, (3) violation of New York state's anti-dilution law, and (4) declaratory judgment against Defendant.[2] Accordingly, Plaintiff asks this Court to enjoin Defendant from using the "mintology" mark, order Defendant to remove all references to the mark, and pay for attorneys' fees and costs.

### 1.  *Plaintiff adequately alleged Trademark Infringement under the Lanham Act, 15 U.S.C. § 1125*

The Lanham Act is grounded in two central policy concerns: protecting consumers from confusion and protecting the trademark owner's goodwill to allow the trademark holder to shape

---

[2] Though the Complaint also asserts a claim for False or Fraudulent Procurement under the Lanham Act, 15 U.S.C. § 1120, Plaintiff does not move for default judgment as to this claim. To prove fraudulent procurement, a complainant must show that the registrant knowingly made false, material representations of fact in connection with an application for a registered mark with the intention to induce the listener to act or refrain from acting on reliance of the misrepresentation, which was reasonably relied on, and the plaintiff suffered damages. 15 U.S.C. § 1064; *see, e.g.*, *George & Co. LLC v. Spin Master U.S. Hldgs, Inc.*, 2021 WL 6127389, at *9 (E.D.N.Y. Nov. 23, 2021). Because Defendant has failed to procure the trademark at this time, this claim is not yet ripe. *See GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 242 (S.D.N.Y. 2000) ("[B]y its terms Section 38 . . . does not apply to trademark applications that have not yet been registered"); *Gaudreau v. Amer. Promotional Events, Inc.*, 511 F.Supp.2d 152, 160 (D.D.C. 2007) (citing cases on this point).

the contours of its reputation. *See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 636 (1st Cir. 1992). In order to establish a likelihood of success on a common law trademark infringement claim, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a); *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). Plaintiff adequately pleads both.

### i.    *Plaintiff's "mintology" mark is valid and entitled to protection.*

An unregistered mark can be protected under the Lanham Act if it is "inherently distinctive." *Caliko, SA v. Finn & Emma, LLC*, No. 21-CV-3849 (VEC), 2022 WL 596072, at *9 (S.D.N.Y. Feb. 28, 2022); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Of the four categories of marks identified in *Abercrombie*—(1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful—marks that are suggestive (meaning that it requires imagination to reach a conclusion as to the nature of the good) or arbitrary or fanciful (meaning the word was invented solely for the product) are considered inherently distinctive and therefore protectible. *Id.* at 11 n.12. The Complaint alleges that the mark "mintology" is arbitrary or fanciful. Not a real word, the mark was created specifically for this Plaintiff's business-to-business division, and it is therefore protectible. Compl. ¶ 54; *see Caliko, SA*, 2022 WL 596072, at *9.

Common law trademark rights for inherently distinctive marks are governed by priority use: the user who first appropriates the mark obtains an enforceable right to exclude others from using it as long as the initial appropriation and use is accompanied by an intention to continue exploiting the mark commercially. *Woodstock Ventures LC v. Woodstock Roots, LLC*, 387 F.Supp.3d 306, 315 (S.D.N.Y. 2019) ("Exclusive rights in a trademark are acquired not by registration, but through prior appropriation and use."); *H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F.Supp. 796, 802-03 (S.D.N.Y. 1996). As alleged in the Complaint, Plaintiff began using

the "mintology" mark at least six months before Defendant, and it continues to use it in commerce today. Compl. ¶¶ 34, 50.

       *ii.*    <u>*Defendant's continued use of the mark will continue to cause confusion.*</u>

Courts look to the *Polaroid* factors to determine whether there is a likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market. *Van Praagh v. Gratton*, 993 F.Supp.2d 293, 301 (E.D.N.Y. 2014) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)). No single *Polaroid* factor is dispositive, nor is a court limited to consider only these factors. *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004). On balance, the Complaint—admitted by Defendant as true by virtue of having defaulted—satisfies this showing. *See generally Kelly Toys*, 606 F.Supp.3d at 48 ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.").

The Complaint sufficiently alleges that Plaintiff's mark is strong. Plaintiff's Mintology division has signed multiple contracts with major domestic companies like MasterCard, Station Casinos, and international companies with fees ranging from $10,000 to $150,000. Compl. ¶¶ 23, 50. It has also been represented at industry festivals and panels (*id.* ¶¶ 24, 27, 29), and has a customer base of over 1 million registered users across over 50 countries, with one client minting over 1.5 million NFTs on the Mintology platform. *Id.* ¶¶ 30, 50.

Furthermore, the similarity of the marks is readily established. Indeed, Defendant is using the *same mark* as Plaintiff. *Id.* ¶¶ 31, 34. As alleged in the Complaint, this similarity has led to actual confusion: candidates interviewing with Plaintiff have confused Defendant's website with

Plaintiff's Mintology division; journalists conducting interviews have asked Plaintiff's CEO questions about Defendant's website; potential partners and suppliers have mistaken the companies; and Plaintiff's marketing firm referenced Defendant's data and information when providing services to Plaintiff's Mintology division. *Id.* ¶ 52.

The competitive proximity of the products is also readily established. Both Plaintiff and Defendant operate in the NFT marketplace and, in August 2022, Defendant pivoted its business to target the same customers and offer the same service—a business-to-business platform—using the same name as Plaintiff. *Id.* ¶¶ 31, 35. Yet, Defendant's platform and services were always of lesser quality. Currently, Defendant's website, which changed from "mintology.studio" to "app.mintology.studio."[3] (not to be confused with Plaintiff's site, "mintology.app") during the pendency of this ligation, promotes "Hot Brand Deals" that link to defunct webpages. Notice of Opp., *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Dec. 26, 2023). The most recent post on its Instagram, "@mintology.studio," is from over a year ago promoting a hotel giveaway.[4]

Finally, Defendant's bad faith is explicitly documented in the Complaint. Its business pivot in August 2012 and creation of a clone business-to-business platform, advertised with many of the same descriptors for Plaintiff's Mintology division, demonstrate Defendant's predatory inclination. Compl. ¶ 35. Moreover, the recipient of multiple cease-and-desist letters documenting Plaintiff's senior use of the mark (its continuous and systematic use of the Mintology name in commerce since Summer 2021), Defendant did not cease its infringing practice, but increased the aggression of its tactics. *Id.* ¶¶ 19, 37-47. Indeed, shortly after becoming aware of Plaintiff's

---

[3] Mintology, https://app.mintology.studio/ (last visited April 2, 2024).
[4] mintology.studio (@mintology.studio), Instagram, https://www.instagram.com/mintology.studio/ (last visited April 2, 2024).

claims, Defendant tried to claim the name for itself by attempting to register the name in the United States. *Id.* ¶ 39. Finally, its patently false statement in its application evinces Defendant's bad faith. *Id.* ¶¶ 16, 19-20, 34, 39-40, 52-59. Defendant's knowledge of Plaintiff's senior use of the mark is documented in the Complaint, and its bad faith adequately established. *See Caliko, SA*, 2022 WL 596072, at *13 ("[W]here the defendant is aware of the existence of plaintiff's mark and proceeds to use it . . . a finding of 'bad faith' has been inferred") (internation quotation and citation omitted). The *Polaroid* factors clearly weigh in Plaintiff's favor.

Because the Complaint sufficiently alleges that Plaintiff has a valid mark and that there is a likelihood of confusion, Plaintiff has sufficiently alleged a claim of trademark infringement under the Lanham Act.

### 2.  Plaintiff adequately alleged common law trademark infringement under New York state law

A claim for common law trademark infringement under New York law closely parallels a claim for infringement under the Lanham Act. *Caliko, SA*, 2022 WL 596072, at *8. By pleading a successful claim under the Lanham Act, Plaintiff has successfully pled its claim under New York law. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344-45 (2d Cir. 1999); *see infra* Sec. III.B.1.

### 3.  Plaintiff adequately alleged dilution under New York State's anti-dilution law, N.Y. Gen. Bus. § 360-l.

New York's anti-dilution law extends trademark protections to guard against the gradual whittling away of the distinctive mark. *Allied Maint. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 544 (1977). Courts have characterized the interest protected by the statute as the "selling power" of a distinctive mark in the minds of the consuming public. *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624-25 (2d Cir. 1983). The trademark owner must show that its mark has either a distinctive quality (referring to the strength of the mark for infringement purposes) or has

acquired a secondary meaning capable of dilution. *Allied*, 42 N.Y.2d at 545; *Tri-Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 363 (S.D.N.Y. 1998). New York recognizes dilution by tarnishment when the substantially similar mark has been linked to inferior quality products or portrayed in an unwholesome or unsavory context. *See A.M. Surgical, Inc. v. Akhtar*, No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560, at *8 (E.D.N.Y. Apr. 19, 2016) (finding dilution where the mark has "acquired a reputation for excellence" and where the defendant's use of the mark would "mislead[] the public into believe that its products are connected to Plaintiff's"). While confusion and competition are not generally conditions for bringing a claim of dilution, courts are more likely to find dilution by tarnishment where the parties are competitors. *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507-08 (2d Cir. 1996). Injunctive relief is the sole remedy for dilution. N.Y. Gen. Bus Law § 360-l; *Patsy's Italian Rest., Inc. v. Banas*, 575 F.Supp.2d 427, 456 (E.D.N.Y. 2008).

Plaintiff's mark is inherently distinctive because it is "arbitrary or fanciful," and has no other meaning than acting as this mark. Compl. ¶¶ 17, 77. Defendant's use of the "mintology" mark impinges upon the goodwill that Plaintiff has developed through its investment in the mark. As detailed in the Complaint, Plaintiff has invested millions of dollars to develop Mintology, resulting in corporate contracts and recognition on industry panels and festivals. *Id*. ¶¶ 24, 39, 50. Defendant, on the other hand, purports to offer the same services as Plaintiff, but its website is a series of defunct links to "Hot Brand Deals" that are somehow related to NFTs. Notice of Opp., *Mintable Pte. LTD v. Mintology Inc.*, No. 97566272 (T.T.A.B. Dec. 26, 2023). Those in the NFT industry, including consumers and potential corporate clients, are likely to associate with Plaintiff the lower quality of Defendant's products and services, as well as any detrimental events or negative publicity that may befall Defendant. Such events, which are outside of Plaintiff's control,

are likely to injure Plaintiff's business reputation. In fact, Plaintiff has sufficiently alleged that potential hires, partners and suppliers, journalists, and Plaintiff's own marketing firm have confused Defendant's brand for Plaintiff's. *Id.* ¶ 52. Defendant's actions have diluted the "mintology" name that Plaintiff has invested a substantial amount of time, money, and energy in creating. Plaintiff seeks to cease needing to clarify and rehabilitate its reputation from the confusion that Defendant continues to cause. *See, e.g., A.M. Surgical*, 2016 WL 11543560, at *8; *Leviton Manuf. Co., Inc.*, *v. Fastmac Performing Upgrades, Inc.*, 2013 WL 12334706, at *1-4 (S.D.N.Y. Aug. 20, 2013); *Diller v. Steurken*, 185 Misc.2d 274, 278 (Sup. Ct. N.Y. Cnty. 2000).

### C. Plaintiff is Entitled to a Permanent Injunction.

Plaintiff requests that the Court permanently enjoin Defendant from further infringing on Plaintiff's mark. The Lanham Act permits courts to grant injunctive relief to prevent further violations of a plaintiff's trademarks. 15 U.S.C. § 1116. Specifically, a permanent injunction may be granted on a motion for default judgment where a plaintiff demonstrates that it has succeeded on the merits and:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see, e.g., Kelly Toys*, 606 F.Supp.3d at 51-52.

Here, Mintable has suffered irreparable damage by Defendant's willful and knowing infringement upon its "mintology" mark. Plaintiff has had vendors, prospective clients, and business associates confuse its Mintology division with Defendant's. As Plaintiff continues to build up its business-to-business platform, a business model which Defendant conspicuously adopted, Defendant's continued infringement would cause irreparable business harm. *See United*

*States Polo Ass'n v. PRL USA Hldgs., Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011) (permanent injunction granted where the irreparable harm was a likelihood of confusion); *Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. App'x 39, 44 (2d Cir. 2020) ("[t]he loss of reputation and goodwill constitutes irreparable harm"); *Societe Des Produits Nestle, S.A.*, 982 F.2d at 640 ("Hence, irreparable harm flows form an unlawful trademark infringement as a matter of law.").

"A court may infer from a defendant's default that it is willing to or may continue its infringement." *Pearson Educ., Inc. v. Vegara*, No. 09-cv-6832 (JGK)(KNF), 2010 WL 3744033, at *5 (S.D.N.Y. Sept. 27, 2010). As Defendant has not responded to Mintable's multiple cease-and-desist letters, refused to appear before this Court, and has lied at least twice to TTAB, all while infringing upon Mintable's "mintology" mark, it is not assured that a remedy at law would conclusively prevent the continued infringement. *See Montblanc-Simiplo GMBH v. Colibri Corp.*, 692 F.Supp.2d 245, 259 (E.D.N.Y. 2010) (holding that a showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation"); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F.Supp.2d 619, 633 (S.D.N.Y. 2011) ("Given the significant threat of future infringement, Plaintiff cannot be compensated with monetary relief alone."). In such circumstances where the balance of hardships favors Plaintiff, a remedy in equity is appropriate because a permanent injunction would resolve the public's confusion and allow them to correctly attribute Plaintiff's high quality of service to the "mintology" mark.

### D.  Plaintiff is Entitled to Heightened Statutory Damages and Costs and Attorney's Fees.

Plaintiff is entitled to costs and attorneys' fees pursuant to its federal claims because Defendant acted in bad faith.

### 1. Costs

Plaintiff is entitled to the costs incurred in prosecuting its federal trademark infringement and procurement claims pursuant to 15 U.S.C. § 1117(a), subject to the principles of equity. *See Campbell v. Huertas*, No. 20-CV-3471(KAM), 2023 WL 1967512, at *10 (E.D.N.Y. Feb. 13, 2023). After serving numerous cease-and-desist letter, to which response may have avoided many of the costs now sought, Plaintiff filed this Complaint, served Defendant properly and provided courtesy copies to the company via its social media channels, and is now diligently pursuing the protection of its rights before both this Court and TTAB. Defendant has not once appeared in this action. Plaintiff seeks $1,589.16 in costs, which represents the total amount listed on the summary of costs and fees attached as Exhibit A to the Middlemiss Aff., which this district has found to be routinely recoverable. *Hudson Furniture, Inc. v. Mizrahi*, 2024 WL 565095, at *13 (S.D.N.Y. Feb. 7, 2024).

### 2. Attorneys' Fees

This Court may award attorneys' fees in an "exceptional case," or one that "stands out from others with respect to the substantive strength of a party's litigating power . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts have wide latitude to determine whether a case is exceptional and shall evaluate the totality of the circumstances and a variety of factors including "frivolousness, motivation, objective unreasonable (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*, at 554 n.6; *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018).

Defendant's willful infringement makes this case exceptional. Having failed to appear in this action, Defendant is deemed to have willfully infringed Plaintiff's mark "[b]y virtue of the

default[.]" *Tiffany (NJ) v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003). No further analysis is needed but, even so, Defendant's actions suggest a calculated and willful infringement on its part. Defendant did not just co-opt Plaintiff's mark, but intentionally shifted its business model after being operational for eight months to be identical to Plaintiff's. Compl. ¶ 35. Defendant received not one, but four separate cease-and-desist letters, sent via multiple channels of communication, all of which were ignored. *Id.* ¶¶ 37-47. After receiving the first letter, instead of engaging with Plaintiff in any way, Defendant filed its trademark application with the USPTO, deliberately lying on the application that it knew of no other entity which had a senior claim to the mark. *Id.* ¶¶ 39-41. Even when Plaintiff successfully contacted the attorney that filed the trademark application, Defendant continued to ignore Plaintiff and infringe on its mark. Defendant's willful infringement continues to this day, and its pattern of ignoring multiple notices to cease and desist means this case is exceptional, permitting Plaintiff to attorneys' fees. *See Focus Prods. Grp. Int'l, LLC v. Katri Sales Co.*, No. 15-CV-10154 (PAE) (SDA), 2023 WL 3815276, at *3-4 (S.D.N.Y. Jun. 5, 2023) (continued infringement after ignoring cease-and-desist letters amounted to willful and egregious conduct supporting an award of attorneys' fees); *Doctor's Assocs., Inc. v. Patel*, No. 18-CV-2386 (GBD), 2019 WL 3916421, at *4 (S.D.N.Y. Jul. 19, 2019) (case was exceptional where infringement was willful and intentional, defendant failed to appear, and their infringing conduct continued after receiving a cease and desist letter); *Microban Prods. Co. v. Iskin Inc.*, No. 14-CV-05980 (RA) (DF), 2016 WL 4411349, at *11 (S.D.N.Y. Feb. 23, 2016).

This case is exceptional not simply because Defendant has frustrated the litigation process by failing to appear in this forum, but because it chose to appear in another forum—before TTAB—and there made affirmative misstatements regarding its claim to the mark and communications with opposing counsel. Such actions require a remedy to deter such future

behavior. *See Venus by Marai Tash, Inc. v. Prinatriam Ltd.*, No. 21-CV-2098 (LGS) (RWL), 2022 WL 4085747, at *6 (S.D.N.Y., Aug. 24, 2022). Because TTAB cannot order money damages, if the Court decides not to award legal costs, Defendant will have been able to engage in infringing conduct while avoiding payment of any damages by purposefully defaulting in the only forum which could issue monetary remedies. *See id.* at *5 (attorneys' fees may be granted where there is a particular need "to advance considerations of compensation and deterrence.") Issuing monetary remedies here would "achieve the deterrence … policy implications of the Lanham Act." *See Glob. Commodities, Inc. v. Dayax, LLC*, No. 18-CV-5225 (DRH) (ARL), 2022 WL 431426, at *3 (E.D.N.Y. Jan. 13, 2022). Plaintiff's attorneys' fees total $164,657.70, as shown in Exhibit A to the Middlemiss Aff.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court grant Plaintiff's Motion for Default Judgment in its entirety.


DATED: April 2, 2024
            New York, New York

Respectfully submitted,

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

By:  */s/ Arthur D. Middlemiss*

Arthur D. Middlemiss
(Arthur.middlemiss@lbkmlaw.com)
Elizabeth M. Velez
(Elizabeth.velez@lbkmlaw.com)
Annika B. Conrad
(Annika.conrad@lbkmlaw.com)
10 Grand Central
155 East 44th Street, 25th Floor
New York, NY 10017
Telephone: (212) 826-7001
Facsimile:  (212) 826-7146